IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LARRY LENARD WILSON                                                                            PLAINTIFF

v.                                            Civil No. 6:08-cv-06056

DAVID TURNER, Sheriff,
Clark County, Arkansas; and
JACKIE NEWBURN, Jail
Administrator, Clark County
Detention Center                                                                              DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Larry Lenard Wilson (hereinafter Wilson), who is currently incarcerated in Clark County Detention Center, filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. He contends his constitutional rights are being violated because he is being denied adequate medical attention. The Defendants filed a motion for summary judgment (Doc. 19).

Wilson filed a response (Doc. 24) to the motion. However, because I believed additional information was necessary, I propounded a questionnaire (Doc. 25). Wilson was advised that I would consider both his original response (Doc. 24) and his response to the questionnaire in issuing an opinion on the summary judgment motion. Wilson's response to the questionnaire (Doc. 28) was filed on March 31, 2009. The summary judgment motion is now ready for decision.

**1. Background**

Wilson was booked into the Clark County Detention Center (CCDC) on December 8, 2007, after being arrested on several felony offenses. *Plaintiff's Response* (Doc. 28)(hereinafter *Resp.*) at ¶ 1. The pending charges were the only reason he was incarcerated. *Id.* at ¶ 3.

During all times relevant to the complaint, David Turner was the Clark County Sheriff.

*Resp.* at ¶ 5(A).  Jackie Newburn was the jail administrator.  *Id.* at ¶ 5(B).

During the booking process, Wilson indicated he had been hospitalized in the last year for cataract surgery.  *Resp.* at ¶ 2.  On December 10, 2007, Wilson was seen by Dr. Covington, an eye doctor, for a follow-up visit for the cataract surgery.  *Id.* at ¶ 4(A)-(C).  Dr. Covington checked Wilson's left eye and said it was doing well.  *Id.* at ¶ 4(C).  Dr. Covington did not make any notation on Wilson's medical treatment report or tell the deputies that Wilson needed to return for cataract surgery on his right eye.  *Defendants' Exhibit* D-1 (hereinafter *Defts' Ex.*).

Wilson states he was not asking for surgery on his right eye at the time he saw Dr. Covington.  *Resp.* at ¶ 5(C).  Further, Wilson states he doesn't even know if Dr. Covington performs laser cataract surgery.  *Id.*

On February 20, 2008, Wilson submitted a complaint sheet stating he was having problems seeing out of his right eye and needed to go to see an eye doctor.  *Resp.* at ¶ 6(A) & (B).  This is the first complaint he submitted about having problems with his right eye.  *Id.* at ¶ 6(C).  The earliest appointment that the eye doctor, Dr. Teed, had available was on March 6, 2008, at 10:45 a.m. *Id.* at ¶ 7(A).

Wilson was transported to Dr. Teed's office on March 6th and diagnosed with a cataract on his right eye.  *Resp.* at ¶ 7(B).  Dr. Teed recommended that Wilson have surgery on his right eye. *Id.*  Dr. Teed was informed that the CCDC would get a second opinion.  *Defts' Ex.* D at ¶ 6.

On April 7, 2008, Wilson submitted a complaint form saying that if he was not going to get his eye taken care of he would like to know before he went blind.  *Resp.* at ¶ 8(A).  He stated it was getting worse every day.  *Id.*  Defendant Jackie Newburn responded that Wilson could have his family make arrangements for his eye appointments with payment arrangements taken care of.  *Defts' Ex.* G at page 1.  Wilson states this would involve a high risk of escape and his family didn't have

-2-

the $2,100 to pay for the surgery. *Resp.* at ¶ 8(B).

On April 21, 2008, Wilson submitted a grievance complaining that he still needed cataract surgery on his right eye. *Resp.* at ¶ 9(A). He stated he was going blind. *Id.* He asked Mrs. Newburn to let him know if he was not going to be able to get the surgery done. *Id.* He asked that the matter be taken care of as soon as possible. *Id.* In response, Wilson was told that cataract surgery was not a life threatening condition and that he could have it done as soon as he was released from jail. *Defts' Ex.* G at page 2. Wilson states he was told by Mrs. Newburn that it wasn't a life threatening or death situation. *Resp.* at ¶ 9(B). However, Wilson states his "life consist of me seeing." *Id.* He states he was facing 20 or 40 years to life in prison and was under $150,000 bond. *Id.*

According to Sheriff Turner's affidavit, Wilson requested another appointment with Dr. Teed and said he would pay for the surgery on his right eye himself. *Defts' Ex.* D at ¶ 7. Wilson, however, disagrees. *Resp.* at ¶ 10. He states he didn't have the money yet to pay for the left eye surgery so he wouldn't have said he could pay for the surgery on his right eye. *Id.* Further, he "thought 'I know' that the county would pay" for his medical needs. *Id.*

An appointment was made with Dr. Teed and Wilson was transported on July 29, 2008, to Dr. Teed's office. *Resp.* at ¶ 11(A). According to Sheriff Turner, when Wilson informed Dr. Teed he wanted the surgery performed and was going to pay for it himself, Dr. Teed indicated on the detainee request report that he was unable to schedule the surgery until Wilson's current balance was paid or payment arrangements were made. *Defts' Ex.* D at ¶ 9. Further, the detainee request report contains these comments. *Defts' Ex.* D-3.

However, Wilson states on the way to the appointment Deputy Daniel mentioned that he thought the arrangements had been taken care of because he knew Dr. Teed had notified Mrs. Newburn to make an appointment and to send Wilson to the hospital for surgery. *Resp.* at ¶ 11(B).

-3-

Wilson stated he didn't agree to pay for the surgery. *Id.* He states Dr. Teed was willing to perform the surgery because he knew he was going to get paid by the Clark County Sheriff's Department. *Id.*

According to Sheriff Turner, between July 29, 2008, and February 18, 2009, Wilson did not submit any more requests having to do with problems with his right eye. *Defts' Ex.* D at ¶ 10. However, Wilson states he turned in a request to see the eye doctor but was told since he had a case pending against them there was nothing they could do for him. *Resp.* at ¶ 12. Wilson indicates he wanted to see how bad his eye had gotten. *Id.* He states he knows he will go blind if he doesn't get the surgery done. *Id.*

On February 18, 2009, Wilson submitted a request for medical treatment for his right eye. *Original Response* (Doc. 24) at page 4. In response to the request, he was told since he had this case pending he could not be sent to the doctor. *Id.* at ¶ 21. Wilson is still being held in the CCDC pending trial. *Resp.* at ¶ 13.

He is able to see from his left eye. *Resp.* at ¶ 14. His vision in his right eye has gotten worse. *Id.* at ¶ 20. Wilson states he is unable to perform the job of a work crew trustee. *Id.* Further, he states he cannot read his Bible and if he covers his left eye he indicates he cannot see out of the right eye. *Id.* He indicates he cannot see the score if he attempts to watch sports on television. *Id.* He has an upper bunk and has trouble getting up and down at night because of his eye condition. *Id.* He has difficulty playing cards. *Id.* If he had an eye test, he doesn't believe he would be able to see the numbers or letters on a chart with his right eye. *Id.*

Dr. Teed considers the cataract surgery on Wilson's right eye to be elective. *Id.* at ¶ 16(A). However, Wilson states Dr. Teed advised him not to let the eye get in as bad as shape as he did his left eye before the surgery was done. *Id.*

No second opinion was ever obtained by the CCDC officials as to whether Wilson needed

the cataract surgery. *Resp.* at ¶ 17. Wilson contends Dr. Teed was ready to perform the surgery as soon as CCDC officials sent him there. *Id.* at ¶ 18.

### 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Arguments of the Parties

Defendants have now moved for summary judgment. Defendants deny they engaged in any conduct that resulted in Wilson's constitutional rights being violated. First, Defendants contend Wilson was not denied adequate medical care. They maintain they are under no constitutional obligation to pay for elective surgeries. Second, Defendants maintain the Plaintiff cannot establish the existence of any custom or policy which resulted in the violation of his constitutional rights.

Thus, they maintain there is no basis on which Clark County can be held liable.

Wilson argues that the Defendants have an obligation to provide him with adequate medical care. He maintains the cataract is affecting his daily living and causing him to be subject to the risk of falling when getting up to and down from his bunk at night. He maintains the Defendants exhibited deliberate indifference when they denied his request for cataract surgery and denied his requests to return to the eye doctor for re-examination.

### 4. Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "For a claim of

deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

The Defendants' summary judgment motion is premised on the single fact that since the cataract surgery could be termed "elective" they had no "legal" obligation to provide the surgery. However, the question is not whether a given procedure is elective but whether the detainee has a serious medical need.  *See Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir. 1989)(The fact that a surgery is elective "does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners."); *Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986)(classification of hernia as elective surgery did not insulate county from Eighth Amendment duty to provide proper medical care). As noted above, Defendants have an obligation to provide adequate medical care.

Here, Wilson's physician, Dr. Teed recommended that the surgery be performed. Sheriff Turner indicates Dr. Teed was informed that "we would get a second opinion." *Defts' Ex*. D at ¶ 6. However, it appears the second opinion was never obtained. Instead, Wilson was informed that he would have to pay for the "elective" surgery himself. Wilson was then transported to Dr. Teed's office for surgery apparently without any payment arrangements having been made. Dr. Teed then

refused to perform the surgery until payment arrangements were made. Wilson has been continuously incarcerated at the CCDC since December 8, 2007. *Resp.* at ¶ 1. He first submitted a medical request complaining of problems seeing out of his right eye on February 20, 2008. *Id.* at ¶ 6(A). Dr. Teed recommended the cataract surgery on March 6, 2008. *Id.* at ¶ 7(A). More than a year has past since that recommendation was first made. Wilson maintains his vision has deteriorated in his right eye since then. *Id.* This deterioration has affected his activities of daily living. Moreover, he states since he filed this lawsuit on June 3, 2008, Wilson alleges Defendants have denied his requests to even be taken to an eye doctor because of the pending lawsuit. *Resp.* at ¶ 12 & ¶ 19.

Under the circumstances of this case, there is a question of fact as to whether the failure of the Defendants to make arrangements for the surgery constitutes deliberate indifference. *See e.g., Hathaway v. Coughlin*, 37 F.3d 63, 64-69 (2d Cir. 1994)(upholding a jury verdict on Eighth Amendment claim in favor of plaintiff where defendants delayed plaintiff's elective hip surgery for two years); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)(holding eleven-day delay in providing elective surgery not deliberately indifferent); *Johnson v. Bowers*, 884 F.2d 1053, 1056 (8th Cir. 1989)(long delay, nine years, in scheduling elective surgery to repair nerve damage in inmate's arm that results in restriction in use of arm constitutes deliberate indifference); *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)(holding brevity of incarceration is a permissible factor in decision to provide elective surgery); *Delker v. Maass*, 843 F. Supp. 1390 (D. Ore. 1994)(deliberate indifference evidenced by two year delay in surgery for non-incarcerated inguinal hernia); *Green v. Manning*, 692 F. Supp. 1283 (S.D. Ala. 1987)(no deprivation of constitutional rights where inmate's elective knee surgery was delayed); *West v. Keve*, 541 F. Supp. 534, 540 (D. Del. 1982)(seventeen-month delay between recommendation and performance of elective surgery constitutes deliberate

indifference).

I also believe there is genuine issue of fact as to whether the policy of Clark County is to deny detainees any elective surgery. *See e.g., Williams v. Prison Health Services, Inc.*, 167 Fed. Appx. 555, 558-559, 2006 WL 133241, 2 (7th Cir. 2006)(Since Williams alleged that PHS has a "corporate policy that any umbilical hernia is classified as 'elective' surgery, which is routinely denied to prison inmates' he stated a claim against the company."). In this case, there is no evidence that Wilson's need for cataract surgery was evaluated on its own merits. *See e.g., Delker v. Maass*, 843 F. Supp. 1390, 1400 (D. Or. 1994)("Where surgery is elective, prison officials may properly consider the costs and benefits of the treatment in determining whether to authorize that surgery, but the words 'elective surgery' are not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits.").

### 5. Conclusion

For the reasons stated, Defendants' motion for summary judgment (Doc. 19) will be denied by a separate order entered this same date.

DATED this 20th day of April 2009.

    /s/ Barry A. Bryant
    HON. BARRY A. BRYANT
    UNITED STATES MAGISTRATE JUDGE