IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LARRY LENARD WILSON                                                    PLAINTIFF

　　　　　v.　　　　　　　　　Civil No. 6:08-cv-06056

DAVID TURNER, Sheriff,
Clark County, Arkansas; and
JACKIE NEWBURN, Jail
Administrator, Clark County
Detention Center                                                       DEFENDANTS

**MEMORANDUM OPINION**

　　Plaintiff, Larry Lenard Wilson (hereinafter Wilson), who is currently incarcerated in Clark County Detention Center, filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. He contends his constitutional rights are being violated because he is being denied adequate medical attention. Specifically, he contends Defendants refusal to pay for cataract surgery on his right eye amounts to deliberate indifference to his serious medical needs.

　　On May 14, 2009, pursuant to the consent of the parties (Doc. 10), a bench trial was held. At the conclusion of the hearing, the case was taken under advisement pending preparation of this memorandum opinion.

## 1. Background

　　Wilson was booked into the Clark County Detention Center (CCDC) on December 8, 2007, after being arrested on several felony offenses. (Doc. 28) at ¶ 1. He remained incarcerated there through the time of the bench trial.

　　During all times relevant to the complaint, David Turner was the Clark County Sheriff. (Doc. 28) at ¶ 5(A). Jackie Newburn was the jail administrator. *Id.* at ¶ 5(B).

At the trial, the following witnesses testified: (1) Dr. Frank S. Teed; (2) Larry Wilson, the Plaintiff; (3) Officer Brian Daniels; (4) Jackie Newburn, a named Defendant; and (5) Sheriff David Turner, a named Defendant. For purposes of discussion, I will summarize in the first person the testimony given at the evidentiary hearing.

**Dr. Frank S. Teed**

I'm with Arkansas Eye Surgery. I oversee the entire vision correction practice. I'm an ophthalmologist. I have been for twenty years.

I treat patients housed in CCDC. It is not on a scheduled basis; just whenever they call me to see someone who is housed there.

I removed Wilson's left cataract on November 15, 2007. *See Plaintiff's Exhibit* 11 at page 4. It was a successful surgery.

The hospital gave it to him for free. We charged roughly $700 for the initial surgery. This was an ultra discounted amount. We would do the second surgery for the same amount.

Prior to the surgery, I saw Wilson on October 30, 2007. *Plaintiff's Exhibit* 11 at page 2. I diagnosed him with a horrible cataract on his left eye and a small cataract on his right eye. *Id.* On the left he couldn't see fingers past one foot. *Id.* He had 20/40 vision in the other eye. *Id.*

I like to operate on a cataract before they get so far advanced. Wilson had really let the left one get so advanced. I had to use what is called Vision Blue on the cataract. It just makes the operation more complicated.

I probably didn't use the term legally blind. To be legally blind you have to be 20/200 in your best eye.

The surgery returned his vision to 20/30 without correction. *Plaintiff's Exhibit* 11 at page 2. With correction, his vision in his left eye was 20/20. *Id.*

I wasn't compensated for the surgery on his left eye.  Wilson promised to pay for the surgery.  *See Plaintiff's Exhibit* 11 at page 7.  He signed a financial agreement on October 30, 2007.  *Id.*  His conversations about the bill would have been with others.  *Id.* at page 6.  I don't have those conversations with patients about who pays for it.  I don't see where the office records indicate that he has made any payments on the bill.  *Id.* at page 5.

Wilson was brought back into the office on March 6, 2008.  He was in the custody of Clark County.  The receptionist indicated the patient had complained of a bump on his eye lid.  Wilson had 20/20 vision in the eye I had operated on.  He had 20/80 vision in the right eye.  The cataract had gotten worse.  The cataract had gone from 20/40 to 20/80 between October 30th and March 6th.  When I saw him, I said it was fine to have the surgery.  From a medical standpoint, Wilson was fine to have surgery at any point.

I probably did say I wanted to do the surgery before it was just super advanced.  He could have the surgery if he desired it.  However, financial arrangements couldn't be made.

On March 13, 2008, there is a notation in his chart made by Becky that I had said Wilson was "OK for surgery right eye if can be worked out."  *Plaintiff's Exhibit* 11 at page 6.  I offered to do the surgery on his right eye if he would agree to pay up front and make monthly payments on the balance he owed for the surgery on his left eye.  Most of the notes are made by BKM.  Becky is my main insurance person.

On March 14, 2008, Becky talked to Wilson's wife.  *Plaintiff's Exhibit* 11 at page 6.  Becky explained that the surgery was elective and could wait until he got out.  *Id.*  Elective means you can elect to do the surgery or not.  It is not going to hurt you if you don't do the surgery.  When you are ready you can do the surgery.  It is the opposite of an urgent or emergent problem.

Wilson came back into the office in July of 2008 for a bump on his eye but I never saw him.

*Plaintiff's Exhibit* 11 at page 6.  He must have been taken to the insurance person.  *Id.*  I haven't seen him since March 2008.  I never have down here that Wilson was actually scheduled for surgery.

A cataract is a cloudy lens.  A structure in the eye behind the pupil.  In most people it is just something that develops as a result of a combination of aging and genetics.  The progression is different for everyone.  The average age for cataract surgery is seventy-seven.

Wilson was young to have cataract surgery–fifty-four.  He has a kind that progresses fast it went from 20/40 to 20/80 in just six months.

One case in every 10,000 to 20,000 is not elective surgery.  Plenty of people put off cataract surgery for years.  It is not like an appendix where if you don't do it something bad is going to happen.  In Wilson's case he has one good seeing eye.  He sees 20/20 out of the left eye.  One eye is blurring.

Cataract surgery is not elective when there is an overriding reason it needs to be performed right away.  One example is if someone is very far sighted.  Another example is when the cataract is so old it has become liquified, is inflaming the eye, and the protein is leaking out.

If Wilson didn't have surgery for five years, there would be no harm to his eye.  Once surgery is performed, the right eye would be the same as if the surgery were done immediately.  Wilson's eye is not being damaged by not having the surgery done.  He is not in any physical pain.  He does have a loss of vision–blurriness in the eye–until the surgery is performed.

**Larry Wilson**

I'm in the CCDC.  I've been incarcerated since December of 2007.  I was charged with assault, possession of crack cocaine, and furnishing a prohibited weapon.  I was sentenced on April 15, 2009.

-4-

The blurriness in my left eye started in October.  Dr. Teed removed a cataract from my left eye in November of 2007.  When the cataract was removed, it restored my vision.  I can see pretty good out of my left eye.  I use reading glasses.

I went to Dr. Covington after I was incarcerated.  It was a follow-up visit on the cataract surgery on my left eye.

In February or March, I started getting blurry in my right eye.  In March of 2008, Clark County took me to Dr. Teed.  I never told anyone at Clark County that I would make payment arrangements on the previous balance.  Before the surgery on my left eye, I made arrangements and signed a promise to pay.  On my right eye, Dr. Teed didn't mention paying in advance for the eye surgery or for the past surgery.

I wrote grievances and didn't get any response.  I have written everything I have submitted to the court.  I didn't get the responses until after I got them in court.

When you are incarcerated, your medical care is paid for by the County.  I couldn't even pay for the last surgery.  How could I pay for the one on my right eye?  I haven't paid on the previous balance at Dr. Teed's.

My cataract was coming faster than others.  If I cover my left eye, I can't even see you.  I can go blind.

Sheriff Turner says he can't do anything for me while I have the case pending.  They told me I couldn't eat anything the night before the surgery.  Then I was taken to the doctor's office and not given the surgery.  Dr. Teed was willing to give me the surgery.

I don't know if the Arkansas Department of Correction (ADC) will give me the surgery or not.  The County is doing everything else.  Women are getting ultra-sounds, inmates are going for

mental examinations, other inmates are getting procedures that cost more than the cataract surgery. There is too much trouble in the jail for me to be watching my back with one eye.

### *Officer Brian Scott Daniels*

I'm a deputy with the Clark County Sheriff's Office.  I transported Wilson to appointments at Dr. Teed's office.

At one visit, I recall a conversation between Wilson and Dr. Teed about an unpaid bill and financial arrangements.  I recall Wilson telling Dr. Teed he wanted to have surgery while he was incarcerated and Clark County would pay for it.

I remember something about instructions once surgery was scheduled.  Wilson couldn't be given anything after midnight.  I don't recall if the instructions came from Dr. Teed or the gal at the desk.

The second time I took Wilson to Dr. Teed's I remember talking with Wilson and asking him what the visit was about.  However, I don't remember the details.

### *Jackie Newburn*

I'm unemployed right now.  I was the jail administrator at the CCDC.  I would receive and answer complaints and grievances, scheduled doctor appointments, order supplies, and generally oversee the jail.

Wilson submitted complaints and grievances regarding his right eye.  Plaintiff submitted this complaint stating he was having problems with his right eye on February 20, 2008.  *Plaintiff's Exhibit* 2 (right eye; problems seeing out of my eye, cataract).  I made an appointment with Dr. Teed on March 6, 2008.  *Id.*  I did not transport Wilson to the appointment.

I don't recall telling Wilson the cataract was not a life and death situation.  I told Wilson his

family could make arrangements for the surgery and we would transport him.  There is a spot on the request forms for a response.  I put the request forms in the inmate's file and the inmate gets a copy.

I did not respond to this complaint from Wilson, *Plaintiff's Exhibit* 7, Tim Patterson did.  He states that "[c]ataract surgery is not life threatening."  *Id.*

Wilson was transported in July to Dr. Teed's office.  Wilson came out and wanted to talk about surgery on his eye.  I told him he could have his family make payment arrangements.  He said he would call his wife.  The July appointment was scheduled because he said he had a bump on his eye.    Wilson was constantly reading.  He could do all his daily functions.  He worked on work detail for awhile.  Whether he was chosen for work detail had nothing to do with his eye sight.

This was an isolated incident involving an "elective surgery."  This was the first situation where a surgery was denied because it was elective.

I worked there seven years.  I never told anyone Clark County would be responsible for payment of surgery.  I didn't have the authority to decide if Clark County would be responsible for it.  The Sheriff decided.  It was not a judgment call I made.

### Sheriff David Turner

I have been Sheriff for three years.  This is my second term.

With respect to running the jail, I try to let the jail administrator and chief deputy take care of the jail.  I never spoke to Wilson.

Dr. Teed sent dates and also information about what he could or couldn't do.  I told Jackie Newburn to hold off on the surgery until we got a second opinion.  It's an elective surgery.  I myself have problems on my left eye and have chosen not to do it.

We provide necessary health care.  Wilson has gotten all necessary medical care.

We tried to make an appointment with Dr. Covington to get a second opinion.  He wouldn't see Wilson.  This was about a month or a month and a half ago.  We were told that at the time.  We didn't receive written notice until yesterday.

Wilson was on the work crew at one time.  He was out washing cars yesterday.  It is left to the jail administrator who gets on the work crew.  The administrator looks at the inmate's charges, attitude, etc.

No one has offered to pay for any of this.  I haven't had any conversations with Dr. Teed about Wilson.

## 2.  Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir.  2007).  In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle  v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered

[from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)(internal quotation marks and citation omitted).

While detainees have the right to "reasonable medical care in the face of a known substantial risk of harm," *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), the "Eighth Amendment does not guarantee all prisoners medical care commensurate with that enjoyed by civilian populations." *Hines v. Anderson*, 547 F.3d 915, 922 (8th Cir. 2008). In this case, the testimony made clear that Dr. Teed merely recommended Wilson have cataract surgery on his right eye at some point in the future when he could make the financial arrangements to do so. From a medical standpoint, Dr. Teed indicated Wilson could have the surgery at any point and Dr. Teed was willing to perform the surgery in March of 2008.

Dr. Teed's testimony established that whether or not the surgery was performed in 2008, 2009, 2010, or some other point in the future would make no difference to the outcome of the surgery; the surgery would be effective and Wilson's vision restored. Dr. Teed unequivocally testified that there was no damage to the eye itself and Wilson was in no physical pain from the delay in surgery. The sole problem caused by the presence of the cataract was Wilson was having blurriness or vision loss in the right eye.

Wilson testified he was able to read with reading glasses, was able to see with his right eye,

and had written all documents filed or submitted in this case himself.  Jackie Newburn testified that Wilson was able to go about the activities of daily living at the CCDC without apparent problems.

The day of the trial, Wilson maneuvered around the courtroom without any apparent difficulty.  He was able to read from exhibits, present exhibits to the witnesses, and in all other respects present his case without any difficulty.  As testified to by Dr. Teed, while Wilson may have some blurriness and loss of vision in his right eye caused by the cataract, he has 20/20 corrected vision in his left eye and is clearly able to go about his activities of daily living.

I find no evidence of deliberate indifference on the part of the Defendants.  *See Sherrer v. Stephens*, 50 F.3d 496, 496-97 (8th Cir. 1994)(per curiam)(to show deliberate indifference, plaintiff must submit evidence that, *inter alia*, defendants ignored acute or escalating condition, given type of injury in his case).  As noted above, the testimony clearly establish the surgery was not, and is not at this point, a medical emergency or even a medical necessity.  *See Green v. Manning*, 692 F. Supp. 1283 (S.D. Ala. 1987)(no deprivation of constitutional rights where inmate's elective knee surgery was delayed).  Wilson presented no evidence that the delay was detrimental to his health.  In fact, Dr. Teed testified the delay has caused absolutely no injury to Wilson's eye and the surgery will be as effective whether performed now or two years from now.

### 3.  Conclusion

For the reasons stated, I find judgment should be entered in Defendants' favor.  A separate judgment will be entered this same date.

DATED this 10th day of June 2009.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE